**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Langdon Smith FOSTER, Defendant-Appellant.**

**No. 25810.**

United States Court of Appeals, Ninth Circuit.

Feb. 9, 1971.

move for· transfer to another forum under 28 U.S.C. § 1404(2) (1964).

Michael E. Somers, of Somers, Fox, Freis & Kallen, Santa Monica, Cal., for appellant.

Robert L. Meyer, U. S. Atty., David R. Nissen, Chief, Crim. Div., David P. Curnow, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before TUTTLE,* BROWNING and HUFSTEDLER, Circuit Judges.

TUTTLE, Circuit Judge:

Appellant was convicted of violating the Universal Military Training and Service Act for refusing to submit to induction. Because we feel that a prima facie case for a III–A hardship deferment had been made out, the draft board's failure to reopen requires that we reverse the judgment of the trial court.

The pertinent facts reveal that appellant was scheduled to report for induction on October 15, 1968. Due to the fact that his mother was about to undergo a serious eye operation, would be unable to work and would require extensive post-operative care, appellant was granted his request for a postponement of induction "until further notice." On November 15, 1968, after a review of the facts, the local board set December 3, 1968 as the new induction date. Prior to November 15th, however, appellant was sent as SS Form 118, Dependency Questionnaire which, upon completion, would have enabled him to formally request a III–A hardship deferment. Appellant never returned this form, but rather requested another postponement due to the fact that his mother was to have a second eye operation.

Once again, appellant's induction was postponed, this time to February 4, 1969. On January 22, 1969, however, appellant's mother submitted a letter specifically requesting a hardship deferment. On February 3, 1969, the board notified appellant that the information received from his mother did not warrant a reopening and refused to grant any further postponements. Because of appellant's actions, however, further postponements were necessary.[1] His fi-

---

* Elbert Parr Tuttle, Senior United States Circuit Judge for the Fifth Circuit, sitting by designation.

1. Though he did report, he did not complete his induction, and failed to return the next day. On February 10, 1969 he informed

nal induction date was June 17, 1969 at which time he refused to be inducted.

Appellant raises a number of issues, two of which we shall discuss in detail.

Appellant claims that his induction order was invalid because it was postponed more than 120 days.[2]

Indeed, it was postponed for a total of 246 days. Since, however, every postponement, including those occurring after the 120 day period had run, was granted at appellant's specific request or was due to his actions and all were for his benefit, we feel we would be taking an unnecessarily rigid approach by saying, in effect, that the local board does not have the discretion to aid the registrant by allowing him more time than the regulations specify. In this respect, this case differs from United States v. Lonidier, 427 F.2d 30 (9th Cir. 1970), and United States v. Stevens, decided this day, 438 F.2d 628 (9th Cir. 1971). In both of these other cases the prolonging of the postponement period had the effect of placing the registrants involved in a state of limbo. Though they had nothing to do with delaying their local boards' ultimate decisions beyond the 120 day maximum, their induction was "held in abeyance" indefinitely. Since the uncertainty that resulted was not of their own making, we feel that these two cases differ significantly from the case at bar.

Appellant also argues, however, that a prima facie case for a III–A hardship deferment had been made out, and that the local board's failure to reopen constitutes reversible error. We agree. The information submitted by appellant, combined with the information and specific deferment request submitted by his mother, clearly set forth a prima facie case.

The Government contends that appellant never personally made a III–A request and that that of his mother was insufficient. Appellant, on the other hand, notes that though his letters to the draft board were couched in terms of postponement rather than reclassification, the local board was, nonetheless, on the basis of the information submitted, compelled to reopen. He argues that draft law is extremely complex and full of traps for the unwary but, the Selective Service system, not being viewed as an adversary proceeding, does not even allow the presence of counsel at draft board hearings. It is, therefore, only fair, he says, that a registrant not be held to the same level of precision in making his requests as may be required under other circumstances.

Though we note that this is a persuasive argument, it is unnecessary for us to decide this point since we feel that the specific request for a hardship deferment made by appellant's mother

---

the board why he failed to return and the board responded by reordering him for induction on March 11, 1969. On March 10, 1969 the board received a letter from appellant's doctor who claimed that appellant did not meet "the minimum standards for military service." He reported for induction on March 11, 1969 but was not inducted because of an inquiry into his physical acceptability. On May 15, 1969 he was ordered to report on June 3, 1969. Appellant, however, again requested a postponement to enable him to finish school. The local board granted it and set the final induction date at June 17, 1969.

2. Section 1632.2 of the Code of Federal Regulations states:

In case of death of a member of the registrant's immediate family, extreme emergency involving a member of the registrant's immediate family, serious illness of the registrant, or *other extreme emergency beyond the registrant's control*, the local board may, after the Order to Report for Induction (SSS Form #252) has been issued, postpone the time when such registrant shall so report for a period not to exceed 60 days from the date of such postponement, subject, however, in cases of imperative necessity to one further postponement for a period not to exceed 60 days. * * *

should clearly have been enough to have triggered the reopening procedures.[3]

The Government, however, contends that the mother's request was insufficient, in and of itself, to make out a prima facie case. They claim that under Miller v. United States, 388 F.2d 973 (9th Cir. 1967), a local board examining new information to determine whether it should reopen is confined to what is submitted on the date that the request for a deferment is made. To consider more, they feel, would be a constructive reopening, necessitating, reopening procedures, even though the board may ultimately feel that a reopening was not proper.

■ We disagree with this interpretation. When new facts are submitted to the local board they must be viewed in their proper context, not in isolation. A local board may look at the entire picture in determining whether a prima facie case has been made out. To hold otherwise, would lead to unnecessary repetition in the filing of information, or possibly cause a naive registrant to file less information than actually available to him; in short, it would appear to be wholly unreasonable.

■ Miller v. United States, *supra,* does not, as the Government contends, require such an anomalous holding. In that case the local board not only viewed the registrant's entire file, but engaged in evaluative consideration and judgment, and determined that *"regardless*

*of the prima facie sufficiency of the information submitted,* it was not, when probatively weighed against other elements in the situation, entitled to credence as fact" Id. at 975 (emphasis added). This was a constructive reopening, for the local board's failure to reopen was not due to the fact that a prima facie case had not been established, but because of its view of the ultimate merits of the case. In the case at bar, we hold not only that a prima facie case had been established, but that examining the entire file to make only this determination, regardless of its ultimate merits, does not constitute a constructive reopening.

As appellant notes, the file in this case contained the following facts: (1) appellant's mother was a widow; (2) she was scheduled for a serious eye operation which would require extensive post-operative care; (3) the first operation rendered her unable to work for at least six months; (4) during this period, she was in need of financial assistance; (5) the registrant's mother requested his presence during and immediately following the operation; (6) the participating doctor substantiated this information and stated that both he and patient would appreciate the registrant's presence; (7) a second operation was performed on December 4, 1968; (8) the registrant's mother's deferment request stated that she lacked transportation to work, that she had been out of work for $3\frac{1}{2}$ months at a loss of $2,000 and had incurred $1,700 of medical bills.

---

3. The local board received a letter from the Defendant's mother on January 22, 1969 stating that the induction of the Defendant "will inflict great hardship on me." In addition, it stated:

"I am recovering from catarract (sic) surgery but due to the fact of continuing eye change I cannot be fitted for permanent glasses & (sic) cannot get a driver's license.

"Since there is no bus service where I live & (sic) also where I work it would cost me $6 per day taxie (sic) fare transportation.

"I have been out of work for $3\frac{1}{2}$ months a financial loss of $2,000 plus I have $1700 of medical bills to pay.

"Langdon has registered at school & (sic) would graduate in June if allowed to attend.

"I hope you will take the circumstances into consideration and *realize a deferment will be a great benefit to his mother."* (Emphasis added.) 32 CFR § 1625.2 states:

"The local board may reopen and consider anew the classification of a registrant (a) upon the written request of * * * any person who claims to be a dependent of the registrant * * *"

These facts clearly set forth a prima facie case. That is to say, if true, they justify a change in appellant's classification and they arose under circumstances beyond his control. Thus, we feel that, as the Supreme Court stated in Mulloy v. United States, 398 U.S. 410, at 411, 90 S.Ct. 1766, 1770–1771, 26 L.Ed.2d 362 "where the registrant has set out new facts which establish a prima facie case for a new classification, a Board must reopen to determine whether he is entitled to that classification. Not to do so * * * is an abuse of discretion * * *."

Appellant raises a number of other issues. However, in light of our ruling on the hardship claim, it is not necessary to deal with them.

The case is reversed and remanded with directions to dismiss the indictment.