UNITED STATES of America,
Plaintiff-Appellee,

v.

Albert James GOODHEIM,
Defendant-Appellant.

No. 80–1408.

United States Court of Appeals,
Ninth Circuit.

Dec. 9, 1981.

---

* Honorable James M. Burns, Chief Judge, U. S. District Judge for the District of Oregon.

## ORDER

Before FLETCHER, PREGERSON, and REINHARDT, Circuit Judges.

The government petitions for rehearing, addressing the retroactivity issue which it failed to discuss in its responsive brief although it had been raised and argued in appellant's opening brief. The government does not contend that our decision, 651 F.2d 1294, is inconsistent with *any* prior Ninth Circuit decision, including *United States v. Potts*, 528 F.2d 883 (9th Cir. 1975) (en banc), nor does it contest our view that *Potts* is controlling. Rather, the government argues only that our decision is in conflict with decisions of other circuits, in particular *United States v. Polizzi*, 493 F.2d 570 (3d Cir. 1974), and *United States v. Mercado*,

478 F.2d 1108 (2d Cir. 1973). The government contends that those cases require a showing of actual reliance on prior contrary circuit law to foreclose retroactive application of Supreme Court decisions while our decision does not.

■ In this circuit we do not require that an individual defendant demonstrate that he actually relied on clearly enunciated rules adopted by us and in effect at the time the alleged criminal conduct occurred. That is unmistakably clear from *Potts*. There we reasoned that at a time when our previous decision in *United States v. Hoctor*, 487 F.2d 270 (9th Cir. 1973), stated the law in this circuit, "*a person such as Potts*, whose sole prior felony conviction had been expunged pursuant to the Washington statute, *could not reasonably have suspected* that his possession of a firearm . . . would constitute a § 1202(a)(1) violation. *As Potts lacked notice* of our subsequently revised view of the statute, 'due process fairness bars the retroactive judgment of his conduct using the expanded definition.'" 528 F.2d at 886 (emphasis added) (quoting *United States v. Jacobs*, 513 F.2d 564, 566 (9th Cir. 1974)). We did not examine whether Potts had actually relied on *Hoctor* and did not consider such actual reliance necessary. To the contrary, the critical inquiry was whether the state of the law of this circuit precluded notice to Potts and others that the act charged was criminally culpable. That is the same inquiry we made in the case before us.

In *Potts*, we did not consider the state of the law in other circuits as bearing on the question of notice to defendants in this circuit. At the time Potts committed the act charged, the circuits were divided on the issue there involved. *Compare Hoctor with United States v. Mostad*, 485 F.2d 199 (8th Cir. 1973). The *Potts* court did not even mention the division in the circuits when it determined that the law of *this* circuit precluded proper notice to Potts that his conduct would be considered criminal in nature.

The cases cited by the government do not require a contrary result. We do not read *Mercado* or *Polizzi* as conditioning prospective application of all decisions of the Supreme Court on a showing of actual reliance.[1] The thrust of the courts' reasoning in those cases was that, in the circumstances there involved, it would have been *unreasonable* to rely on prior circuit precedent. In both those cases the defendants had *notice* that the prior circuit law could *not* be relied on. In both cases, the courts ultimately applied *Ehlert v. United States*, 402 U.S. 99, 91 S.Ct. 1319, 28 L.Ed.2d 625 (1971), retroactively. However, in both instances, the Supreme Court had granted *certiorari* in *Ehlert before* the defendant committed the unlawful act; thus the precise issue the defendants raised was pending before the Supreme Court at the time the defendants committed the act involved.[2] In short, both courts said that reliance on the prior case law of their circuits would have been unjustified at a time when the precise issue was pending before the Supreme Court and the Supreme Court's action in granting *certiorari* had provided notice to the defendants that the prior law of the circuit could no longer be relied upon. *Mercado*, 478 F.2d at 1111; *Polizzi*, 493 F.2d at 572.

Whatever our view of the law might be in a case like *Mercado* or *Polizzi*, the circumstances in *Goodheim* are markedly different. *United States v. Pricepaul*, 540 F.2d 417 (9th Cir. 1976) unequivocally stated the law of the circuit at the time Goodheim purchased the firearms. That decision has been reaffirmed in *United States v. O'Neal*, 545 F.2d 85 (9th Cir. 1976). The Supreme Court had taken no action which indicated that it would consider whether the law in this circuit should be reversed. It was not until two years after Goodheim purchased the firearms that the Supreme Court granted *certiorari* in *Lewis v. United States*, 445 U.S. 55, 100 S.Ct. 915, 63 L.Ed.2d 198 (1980).

■ The fundamental principle enunciated in *Potts* and reaffirmed in *Goodheim* is an important one. Where the clear, settled law of this circuit precludes notice that conduct is criminal, due process does not permit a criminal conviction for that conduct. The Supreme Court tells us when our statements of the law are erroneous. However, until the Supreme Court takes some action, the law as we have determined it is the law in this circuit. We are not free to choose to follow the decisions we like and ignore those we do not. All parties, the government as well as private persons, are bound by the law as we have found it. To hold otherwise would not only violate constitutional principles, but would undermine the integrity of our federal appellate system.

The petition for rehearing is denied.

### ORDER

The United States did not file a suggestion for rehearing en banc. However, an active judge requested that the case be heard en banc. The request was submitted to a vote of the active judges and a majority of the court voted not to hear the case en banc. Judge Sneed dissents from that decision and has filed a dissenting opinion.

SNEED, Circuit Judge, dissenting from the failure of the court to hear this case en banc:

I write to state briefly my reasons for believing this case should have been heard by the court en banc.

The principal reason is that the rule enunciated by this case is difficult to discover after reading both the opinion and

---

1. The reference to actual reliance in these cases is explained by the argument pressed on appeal. Each appellant claimed that he did not knowingly or wilfully refuse to submit to military induction within the meaning of 50 U.S.C. App. § 462(a) because he reasonably relied on the prevailing case law in his circuit. In the induction cases, the appellants asserted that their reliance on circuit law bore directly on whether the conduct charged was included within the criminal statute. That is not the issue here.

2. In fact, in *Polizzi* the precise issue had been argued before the Court prior to the time of the alleged act.

the "explanatory" order. The opinion, broadly read, could mean that no Supreme Court decision, not favorable to a defendant charged with a violation of criminal law and also contrary to an existing rule or principle of this court's jurisprudence, could be applied to any defendant within this circuit whose acts alleged to be criminal occurred prior to the Supreme Court decision. Such a broad reading would defer the effect of certain Supreme Court decisions within this circuit for a substantial period of time, presumably without regard to whether the Supreme Court made its holding retroactive or not.

The "explanatory" order of the panel suggests this broad meaning was not intended. I hope that this is true. Certainly the failure of the court to hear this case en banc is inconsistent with such a broad interpretation. A failure to consider en banc the wisdom of a rule of that breadth would brand this court as irresponsible. This is a charge not to be made lightly or accepted readily. Therefore, I conclude that this broad meaning was not intended by the panel.

At the other extreme is the interpretation that this case only applies to those defendants situated precisely as was the defendant Goodheim in this case. That is, the rule of *United States v. Goodheim* is no broader than its facts. Neither the opinion nor the order support this interpretation. A broader rule is compelled by the language of the panel.

At this point reasonable certainty and precision vanish. Two themes appear in the two movements of the panel's composition, *viz.*, the ex post facto bar against expanding criminal liability after the acts in question and the due process requirement of adequate notice of the criminality of the acts prior to their occurrence. Each reinforces the other and, given full force, would provide support for the broad interpretation of this case which I believe this court has rejected.

To retreat from the abyss of either the overly broad or the unjustifiably narrow, toward which these themes like sirens do either draw or drive us, requires that we assign to *Goodheim* some meaning between the two extremes. This is a task that this court sitting en banc should have undertaken. Our failure to do so places upon each panel confronted with a situation having *Goodheim* characteristics the burden of formulating its version of the rule of *Goodheim*. For my part I intend to be guided by the following sentence that appears in the panel's order:

> "Where the clear, settled law of this circuit precludes notice that conduct is criminal, due process does not permit a criminal conviction for that conduct."

To me this is the *Goodheim* rule. There I stand until my sisters and brothers tell me to move along, which order, if given, will be without adequate warning.